**CASE No. 25-8027**

———————————————————————

THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————————————————

ASHLEY WILLEY & SEAN WILLEY,

Appellants/Plaintiffs

v.

SWEETWATER COUNTY SCHOOL DISTRICT #1, ET AL.

Appellees/Defendants

———————————————————————

On Appeal from the United States District Court for the District of
Wyoming
The Honorable Scott W. Skavdahl

Case No. 23-cv-69-S

———————————————————————

**PLAINTIFFS-APPELLANTS' REPLY BRIEF**

———————————————————————

Mary E. McAlister, Esq.
Ernest G. Trakas, Esq.
Child & Parental Rights Campaign
5425 Peachtree Parkway, Suite 110
Norcross, GA 30092
(770) 448-4525
mmcalister@childparentrights.org
etrakas@childparentrights.org
Attorneys for Appellants/Plaintiffs

***Oral Argument is Requested***

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES.................................................................. iii

SUMMARY OF ARGUMENT ....................................................................1

LEGAL ARGUMENT ..................................................................................5

I.   Defendants exacerbate the district court's error by exceeding the permissible scope of review of a Motion for Summary Judgment.........5

   A.   The court's error regarding the free exercise claim ....................6

   B.   The court's error as to the parental rights claim ........................8

II.  Defendants cannot distinguish *Mahmoud* and extinguish its preclusive effect on the district court's decision. ................................10

   A. The District's policy substantially interferes with parents' rights to direct their child's religious upbringing.......................................11

   B.   Defendants cannot claim they were compelled by law to violate Mrs. Willey's fundamental rights....................................................14

III. Defendants most cogently demonstrate the district court's error by devolving into ad hominem attacks on the Willeys' faith and compounding the district court's usurpation of its authority under Rule 56. .......................................................................................16

   A. Defendants' incendiary, ad hominem attacks on the Willeys' religious beliefs demonstrate that the district court's decision cannot be upheld in light of Mahmoud and other constitutional precedents. ...............................................................................................16

   B.   The district court erred in engaging in the *Smith* neutral/ generally applicable analysis to find that there was no violation of Mrs. Willey's free exercise rights in her role as a teacher................18

   C.   The District's actions coerced Mrs. Willey to violate her sincerely held religious beliefs ...................................................................20

IV. Defendants cannot validate the District Court's impermissible adoption of an inquiry requirement for exercise of fundamental parental rights.......................................................................................21

i

CONCLUSION ............................................................................25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................27

CERTIFICATE OF SERVICE...........................................................28

# TABLE OF AUTHORITIES

**Cases**

*Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010) ......................... 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................... 5, 19

*Bostock v. Clayton County*, 590 U.S. 644 (2020) ............................. 14, 15

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ................................................................ 20

*Cillo v. City of Greenwood Vill.*, 739 F.3d 451 (10th Cir. 2013) .......... 5, 19

*Does 1-11 v. Bd. of Regents of Univ. of Colorado*,
   100 F.4th 1251 (10th Cir. 2024) ............................................. 23

*Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044 (10th Cir. 2023)
   ........................................................................................ 10

*Fulton v. City of Philadelphia*, 593 U.S. 522 (2021) .............................. 20

*Groff v. Dejoy*, 600 U.S. 447 (2023) ..................................................... 21

*Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507 (2022) ......................... 20

*Koch v. City of Del City*, 660 F.3d 1228 (10th Cir. 2011) ........................ 3

*Mahmoud v. Taylor*, 145 S.Ct. 2332 (2025) ................................ 3, 12, 14

*Ortiz v. New Mexico*, 550 F. Supp. 3d 1020 (D.N.M. 2021) ...................... 1

*Runyon v. McCrary*, 427 U.S. 160 (1976) ............................................. 24

*Swanson v. Guthrie Indep. Sch. Dist. No. I-L*,
   135 F.3d 694 (10th Cir.1998) ................................................. 24

*Troxel v. Granville,* 530 U.S. 57 (2000) ........................................... 14, 16

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ................................... 14, 16, 24

*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014). ............................. 7

## SUMMARY OF ARGUMENT

In a statement dripping with irony, Defendants argue that Mrs. Willey "cannot avoid summary judgment by relying on conclusory opinions, speculation, or unsupported allegations." Yet, in an effort to avoid reversal, Defendants do exactly that. (Answer Brief, Dkt. 32, p. 14, citing *Ortiz v. New Mexico*, 550 F. Supp. 3d 1020, 1074 (D.N.M. 2021)). Defendants state that Mrs. Willey "cannot rest on ignorance of facts or mere hope that evidence will emerge at trial" to defeat summary judgment (*Id.* citing *id.*), but then rely on conclusory opinions, speculation and deliberate ignorance of facts in the record to bolster the district court's improper granting of summary judgment in their favor.

For example, Defendants claim "[n]o evidence exists that the District had knowledge of any of its staff using alternate names or pronouns when referring to the Student after March 29, 2022" (Answer Brief, Dkt. 32, p. 3) but simultaneously acknowledge that there was such conduct by District staff. Defendants state that "during the 2022-23 school year, the student reached out to her former Junior High teacher, Ben Audevart," referencing September 2022 emails in which the teacher, still employed by the District, referred to A.S., then a high school student,

1

by an alternate male name and pronouns and encouraged her desire to identify as a boy. (Appx. Vol. III, pp, 0447-0453). So, there is evidence that staff did, in fact, use the male name and pronouns after March 29, 2022 without Mrs. Willey's knowledge. However, according to Defendants, that does not count because they claimed to not know about the emails at the time and because "Mr. Audevart would not have been made aware of Ms. Willey's March 29, 2022, email as he did not teach at Black Butte High School at that time." (Answer Brief, Dkt. 32, pp. 3-4). So, there is evidence of a disputed material fact regarding secret staff usage of an alternate name and pronouns for A.S after Mrs. Willey's March 29, 2022 email, but it should be disregarded based on Defendants' representations about what the teacher and the rest of the staff knew. That is not the standard for analysis of a Motion for Summary Judgment.

Defendants do not provide this Court with actual references to the evidentiary record to demonstrate that there are no disputed issues of material fact. Instead, Defendants ask the Court to "trust them" that no evidence exists, urging affirmance of summary judgment based on nothing more than Defendants' hollow assurances. [Answer Brief, Dkt. 32, pp. 3, 6]. In other instances, Defendants acknowledge the existence of

evidence but misrepresent its content or offer unsupported commentary regarding its context or meaning without any support in the record, as in the case of the Audevart emails. (Answer Brief, Dkt. 32, pp. 3, 4, 22).

This Court must reject Defendants' invitation to "take their word for it" that no evidence exists of disputed issues of material fact. *De novo* review of a summary judgment ruling requires this Court to **"view the evidence,"** *i.e.,* the evidentiary record itself, not Defendants' version of what they wish it was, "and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). When this Court does so, rather than weighing the evidence as the trier of fact as the district court improperly did, it will recognize that the lower court erred in granting summary judgment to Defendants and, in doing so, created an unwarranted obstacle to the exercise of fundamental constitutional rights.

Defendants also attempt to but cannot escape the impact of the Supreme Court's decision in *Mahmoud v. Taylor*, 145 S.Ct. 2332 (2025) on Mrs. Willey's free exercise and fundamental parental rights claims. To distract this Court from the inescapable conclusion that *Mahmoud*

3

requires reversal of the district court's decision, Defendants resort to hyperbole, innuendo and ad hominem attack. Defendants' suggestion is, frankly, despicable. This aberrant distraction aside, *Mahmoud* establishes that there are genuine issues of material fact regarding whether Defendants have substantially interfered with Mrs. Willey's free exercise rights and right to direct the upbringing of her child, which requires reversal of the district court's decision.

Defendants do nothing to validate the district court's unilateral redefinition of fundamental constitutional rights to include an "inquiry" requirement, choosing instead to cast it as a perfectly reasonable bulwark against a phantom Establishment Clause problem. (Answer Brief, Dkt. 32 at pp. 38-39). Defendants' efforts notwithstanding, the district court improperly avoided the necessary and requisite conclusion to its admission that Mrs. Willey "has a right not to have information regarding her child's gender identity withheld" which was burdened by Defendants, *i.e.,* denial of summary judgment. The district court's redefining of the underlying right requires reversal.

**LEGAL ARGUMENT**

I.   **Defendants exacerbate the district court's error by exceeding the permissible scope of review of a Motion for Summary Judgment.**

The district court admitted that there were disputed issues of material fact related to key issues in Mrs. Willey's constitutional claims, *e.g.*, whether defendants and their policies burdened her free exercise rights, and whether Defendants withheld information from Mrs. Willey in a way that violated her fundamental parental rights under the Fourteenth Amendment. (Appx. Vol. III at 0599-0600, 0582, 0585). Those admissions should have ended the district court's inquiry and summary judgment denied under Fed. R. Civ. P. 56(a), *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). When analyzing a Rule 56 motion, the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Here, the district court went beyond its authorized function of determining whether there are disputed facts (it determined there were) to weighing the evidence. Defendants compound that error, replying with platitudes about the absence of evidence and speculation about what third parties

may have thought or known, while omitting and misrepresenting portions of the record.

Mrs. Willey's burden is to present evidence, which, when all justifiable inferences are drawn in her favor, raises disputed issues of material fact. The district court admitted that she met that burden on more than one occasion.

## A. The court's error regarding the free exercise claim

The court stated that "[p]laintiff has sufficiently shown, as a teacher, that her religious beliefs were burdened" by the District's policies. (Opinion, p. 34, App. Vol. III at 0600). The threat of discipline for failing to comply with the policies, which was established in the record, can be enough "to coerce [Plaintiff] into acting contrary to [her] religious beliefs." (Order, p. 33, App. Vol. III at 0599). "As a teacher in the District, the PNCPs force Plaintiff to either use students' preferred names and pronouns in violation of her religious beliefs or potentially lose her job as a teacher in the district." *Id.* After reaching the correct conclusion - that there was a disputed issue of material fact regarding the burden on free exercise - the district court acknowledged the existence of a dispute regarding whether the various district polices were

neutral and generally applicable, but proceeded to weigh the evidence and reach its own findings of fact. (Order, p. 33, App. Vol. III at 0600-0603). Defendants compound the district court's error in contravention of well-settled Tenth Circuit law that summary judgment must be denied when genuine factual disputes exist concerning the sincerity of religious belief or the extent of governmental burden. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010); *Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014).

Defendants, unlike the district court, do not even attempt to weigh the evidence; they simply ignore it. Defendant Arnoldi's email to Mrs. Willey stating that "unfortunately, we don't get to base our decisions on personal and religious beliefs," together with her testimony affirming that "we don't get to base our decisions on personal beliefs" (Appx. Vol. III at 0540, 0543), demonstrates the direct and substantial burden the District placed on Mrs. Willey's religious beliefs.[1] Defendants did not cite

---

[1] Notably, the district court indirectly cited the email and noted that but for it being dated prior to the implementation of the 2023-2024 PNCP it could be evidence that the "for any reason" language in the 2023-2024 PNCP was merely pretextual and the District was conducting individualized assessments in violating of the free exercise clause. That analysis further demonstrates how the district court's exceeding its authority under Rule 56 and assuming the role of trier of fact.

that evidence, and neither the district court nor Defendants cite evidence to counter the finding that Mrs. Willey had met her evidentiary burden. Only by impermissibly weighing the evidence could the district court have concluded that Defendants were entitled to summary judgment.

**B. The court's error as to the parental rights claim**

The district court also found that Mrs. Willey had shown that she had a constitutionally protected right "not to have information regarding her child's gender identity withheld." (Appx. Vol. III at 0585). Instead of properly continuing its obligation to identify evidence showing Defendants' violation of the right, the district court veered into its redefinition of the word "withheld" and weighing of the evidence according to its newly invented mythical measuring stick.

Defendants compound the district court's error by claiming there was nothing that the district court could have seen that would have saved Mrs. Willey's claims. By extension, Defendants argue there is nothing for this Court to see or consider in its *de novo* review. For example, Defendants say that there is no evidence of any staff using alternative names or pronouns when referring to A.S. after March 29, 2022, yet they admit, because they have no choice, that Ben Audevart corresponded

8

with A.S. using her alternative name and pronouns. (Answer Brief, Dkt. 32, pp. 3-4). Defendants dismiss this evidence by claiming, without citing any evidence, that an impenetrable cone of silence surrounds Black Butte High School, preventing the content of any email sent by Mrs. Willey to Black Butte staff from being shared with and/or known by any party located outside of Black Butte. According to Defendants, there is no disputed issue of material fact regarding staff use of alternate names and pronouns after March 29, 2022, unless the District had direct knowledge. (*Id.*). Such gamesmanship makes for clever sleight of hand, but it does not make disputed material facts vanish to provide Defendants with relief from summary judgment.

Defendants also selectively omit evidence in the record that does not correspond to their narrative and then conclusively state that no evidence raising a disputed issue of material fact exists. For example, former teacher Jennifer Polaski testified that her principal told her that under the 2022 Policy, which they had to sign to keep their jobs, staff must accede to the wishes of students regarding preferred names and could not contact parents. (Appx. Vol. III at 0521-0523). Defendants conveniently omit that testimony when representing to the Court that

9

there is no evidence the 2022 Policy required staff to conceal information from parents and/or lie to parents under threat of discipline.

A decision granting summary judgment is subject to reversal where the court failed to credit evidence favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1052 (10th Cir. 2023). Here the district court failed to credit evidence and to draw attendant and required inferences favorable to Mrs. Willey that did not fit its narrative. That failure to follow Rule 56 and this Court's precedents requires reversal.

## II. Defendants cannot distinguish *Mahmoud* and extinguish its preclusive effect on the district court's decision.

Not surprisingly, Defendants attempt to distinguish the Supreme Court's decision in *Mahmoud* to escape its invalidating effect on the district court's determination that Defendants are entitled to summary judgment. Defendants raise a number of irrelevant, specious arguments against *Mahmoud*'s application and the requisite reversal of the district court's ruling on Mrs. Willey's religious free exercise claims. Sweeping aside Defendants' desperate attempt to salvage the district court's decision, applying *Mahmoud* to the record in this case commands that

Mrs. Willey's claims for violation of her First Amendment free exercise rights go to the jury.

### A. The District's policy substantially interferes with parents' rights to direct their child's religious upbringing.

The record shows that District officials explicitly prioritized student secrecy over parental involvement. At the September 12, 2022, board meeting, District administrators confirmed that if a student expressed fear of parental reaction, the District would "honor the privacy of the student" and that "whatever the student wants is paramount." (FAC ¶¶ 80–81, App. Vol. I at 0165; Transcript, App. Vol. I at 0244–45). Ms. McGovern stated:

> "[t]here are some situations that – and, again, it is on a case-by-case basis.  But if there is a fear from the student, if there are extenuating circumstances that the school is aware of, we honor the privacy of the students." (FAC ¶ 80, App. Vol. I at 0165; Transcript of Meeting 9/12/2022, p. 30, ln. 12-17, App. Vol. I at 0245).

Board Chairwoman Carol Jelaco similarly explained:

> "[i]f the student expresses a fear of telling – of what might happen if they are – if their parents are told, the district, from my interpretation, is bound to keep the student's – shall we say what – whatever the students want is paramount." (FAC ¶ 81, App. Vol. I at 0165; Transcript of Meeting 9/12/2022, p. 29, ln. 9-14, App. Vol. I at 0244).

11

These statements demonstrate that the District's decision-making process prioritized students' wishes over parental authority and that such decisions were not made in conjunction with the student's family. As the *Mahmoud* Court said of the Montgomery County, Maryland policy that prohibited notice to parents, the District's policies prioritizing student "privacy" (vis-a-vis her own parents) and preferences  over parental notification did not merely threaten Mrs. Willey's free exercise right to direct her child's religious upbringing, but undermined the very beliefs which were her right, not the District's, to teach her child.  These beliefs include that human beings are created by God as male or female, and that this divinely ordained and immutable order of human sexuality cannot be altered by individual feelings, beliefs, or discomfort with one's identity, (FAC ¶ 103, App. Vol. I at 0171) and that parents have the non-delegable, God-given duty and responsibility to direct the upbringing, beliefs, and religious training of their children, including concerning human sexuality and identity. (FAC ¶ 104, App. Vol. I at 0171). This undermining of Mrs. Willey's core beliefs created an environment that was hostile to her religious beliefs. *See Mahmoud,* 145 S.Ct. at 2355.

Mrs. Willey also established that through its policies of prioritizing children's "privacy" over notice to their parents, the District exerted improper pressure on A.S. to adopt a viewpoint contrary to her family's faith—that she could identify as something other than her biological sex. *Id.*, at 2355-2356. *See* FAC ¶ 40, App. Vol. I at 0156, "A.S. reported feeling pressured by the District to call herself a boy and expressed discomfort with doing so, but she feared school retaliation if she resisted."

The PNCP explicitly compels teachers to honor a student's request for a new name or pronouns while withholding that information from their parents—thereby denying parents the knowledge necessary to guide their child through consequential decisions. Under the PNCP, parents are deprived of even threshold knowledge. By keeping parents in the dark, the District effectively preempts parental involvement and eviscerates parental authority. A policy of secrecy thus imposes a greater constitutional burden than did the denied opt-out in *Mahmoud*.

By preemptively excluding the parents from decision-making and refusing accommodation, the District substantially interfered with the Willeys' ability to raise their child in accordance with their faith. These actions overstep the constitutional limits on government authority in the

public-school setting established in *Wisconsin v. Yoder,* 406 U.S. 205 (1972), and reaffirmed in *Mahmoud.*

By keeping parents uninformed of their child's "gender transition" at school, the District deprived them of the ability to exercise their faith-based duty to guide their child's moral and spiritual development and beliefs—an interest and right long recognized as fundamental. *Yoder*, 406 U.S. at 233; *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000). Involving parents in the decision to change a child's name and pronouns at school, a decision that is inextricably tied to the parents' sincerely held religious beliefs, as described in *Mahmoud,* does not as Defendants claim, require that the District "endorse a religious viewpoint" or "establish religion" -- but only that they respect a parent's authority to raise their child in accordance with that religious viewpoint. Clearly, accommodating religious exercise is not the same as establishing religion.

**B.    Defendants cannot claim they were compelled by law to violate Mrs. Willey's fundamental rights**

The District's assertion that federal law "required" its secrecy policy is unsupported. *Bostock v. Clayton County*, 590 U.S. 644, 657 (2020), addressed employment discrimination under Title VII, not sex

discrimination under Title IX. Incredibly, Defendants state: "The *Bostock* Court did not limit its holding to Title VII, or the employment context, or otherwise." (Answer Brief, Dkts. 32, p. 30). In fact, the *Bostock* majority opinion expressly did limit its holding to Title VII.

> The employers worry that our decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination. And, under Title VII itself, they say sex-segregated bathrooms, locker rooms, and dress codes will prove unsustainable after our decision today. **But none of these other laws are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and we do not prejudge any such question today.** Under Title VII, too, we do not purport to address bathrooms, locker rooms, or anything else of the kind. The only question before us is whether an employer who fires someone simply for being homosexual or transgender has discharged or otherwise discriminated against that individual "because of such individual's sex."

*Bostock*, 590 U.S. at 681. (emphasis added). As the words of the *Bostock* opinion itself state, Defendants cannot use it as authority to expand the reach of Title IX in the education setting. In particular, *Bostock* cannot be used to justify withholding information regarding a child's gender identity from parents or compelling staff to socially transition students to avoid liability for harassment. (Answer Brief, Dkt. 32, pp. 30-31).

Neither can the text of Title IX, nor administrative interpretations of discrimination and harassment, be used to create new concepts that

violate fundamental parental rights that the Supreme Court has recognized for decades. *Yoder*, 406 U.S. at 233; *Troxel,* 530 U.S. at 65–66. The District's claim that it "had to" exclude parents is therefore not only wrong as a matter of law but demonstrates an unnecessary overreach inconsistent with constitutional constraints on the impediment of constitutionally protected fundamental parental rights and Free Exercise rights.

III.  **Defendants most cogently demonstrate the district court's error by devolving into ad hominem attacks on the Willeys' faith and compounding the district court's usurpation of its authority under Rule 56.**

> **A. Defendants' incendiary, ad hominem attacks on the Willeys' religious beliefs demonstrate that the district court's decision cannot be upheld in light of Mahmoud and other constitutional precedents.**

In a desperate attempt to extinguish the effect of *Mahmoud* on Mrs. Willey's parental free exercise claims and avoid reversal, Defendants abandon any semblance of legal argument to engage in character assassination of the Willeys and a smear campaign against their religious beliefs as members of the Church of Jesus Christ of Latter-Day Saints ("LDS church"). In what can only be labeled as an effort to poison the well of this Court's analysis, Defendants attempt to paint Mrs. Willey as a

16

racist bigot undeserving of the rights confirmed in *Mahmoud*, or the religious accommodation accorded to her as an employee of the District. (Answer Brief, Dkt. 32, p. 44). Defendants raise the specter of the "Hamitic Hypothesis" (a belief that the Black race is the product of a curse by God upon all descendants of Noah's son Ham), a long-rejected and condemned belief on the part of a sector of the LDS Church. (Answer Brief, Dkt. 32, p. 44). To bring home the idea that the Court should attribute this belief to Mr. and Mrs. Willey as members of the LDS church, Defendants add in a footnote:

> Lest the Court think this particular example is overly strained or suggestive of "fringe" beliefs, it is worth noting that the Church of Jesus Christ of Latter Day Saints (the church attended by the Willeys) did not officially disavow teaching of the Hamitic Hypothesis until 1978. Numerous fundamentalist sects within the church still adhere to the teaching. (Answer Brief, Dkt. 32, p. 44, n7)).

Defendants are not merely implying, but effectively asserting, that the Willeys and other members of the LDS Church are racists who should not be accorded the rights accorded other religious parents or in Mrs. Willey's case, granted a religious accommodation from a staff directive. To even raise this incendiary belief about something irrelevant to the Court's analysis, *i.e.,* the identification of the Willeys' church affiliation, is nothing short of a blatant attempt to prejudice this court against the

17

Willeys by labeling them as racist bigots. Such tactics are abhorrent to any professional argument or civil conversation, particularly inappropriate in what should be fact-based legal argument, and beneath officers of this Court.

**B. The district court erred in engaging in the *Smith* neutral/generally applicable analysis to find that there was no violation of Mrs. Willey's free exercise rights in her role as a teacher.**

Defendants further attempt to support the district court's error in granting summary judgment by doubling down on the district court's usurpation of its authority under Rule 56. The district court correctly found that Mrs. Willey's religious exercise in her role as a teacher was burdened, but it erred in concluding that the burden was constitutionally permissible because the District's policies were neutral and generally applicable. The court expressly recognized a disputed material fact— whether Mrs. Willey was ever required to comply with the policy or threatened with discipline for refusal. (Order at 33, App. Vol. III at 0599). The district court further acknowledged disputes regarding the interpretation of Defendants' PNCP polices that employees were required to sign under threat of discipline. (See, Polaski, Appx. Vol. III at 0521-0523) With those disputes identified, the district court was required to

deny summary judgment to Defendants under Fed. R. Civ. P. 56(a). Cillo, 739 F.3d at 461. Instead, as it did with the parental free exercise claim, the court improperly weighed evidence and engaged in the Smith neutral/generally applicable analysis, exceeding its authority under Anderson., 477 U.S. at, 249.

The district court paid particular attention to the District's 2023 Policy which created a discretionary "accommodation process" for staff who had objected to the PNCP, *i.e.*, that staff "may raise concerns with HR," which will "make every effort to reasonably accommodate where possible." (App. Vol. II at 0374). The district court adopted Defendants' interpretation of the 2023 Policy as providing reasonable accommodations "for any reason," without qualification so that all Mrs. Willey or any other staff member needed to do is just ask and they will be "accommodated." (Appx. Vol. III, p. 06062), The district court claimed that Mrs. Willey failed to offer any evidence that the purported "accommodation" was pretextual but admitted that Mrs. Arnoldi's 2022 email could be such evidence if it was dated after August 2023. (Appx. Vol. III p. 0602).

Even if the Court's weighing of the evidence to reach its conclusion were permissible (which it is not), its conclusion that the 2023 Policy was neutral and generally applicable contradicts established precedent. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 537 (1993); *Fulton v. City of Philadelphia*, 593 U.S. 522, 536–37 (2021); *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022). As the Supreme Court said in *Fulton,* by allowing administrators to grant accommodations at their discretion, the policy is neither uniform nor neutral. In *Fulton*, the Supreme Court held that a policy permitting individualized exemptions could not be considered generally applicable, so strict scrutiny would apply. *Fulton*, 593 U.S. at 536. The district court's conclusion, which itself was an impermissible exercise of its authority under Rule 56, constitutes clear error.

### C. The District's actions coerced Mrs. Willey to violate her sincerely held religious beliefs

The district court also downplayed evidence of coercion. Mrs. Willey's supervisors informed her that "we don't get to base our decisions on personal and religious beliefs," denying her request for a religious accommodation. (Arnoldi, email Appx. Vol. III at 0540, 0543). She faced the Hobson's choice of following a policy that violated her faith or risking

discipline and job loss. The threat of discipline for failing to comply with the policies, which was established in the record, can be enough "to coerce [Plaintiff] into acting contrary to [her] religious beliefs." (Order, p. 33, App. Vol. III at 0599).

Contrary to Defendants' characterization, Mrs. Willey does not seek a "blanket exemption" or to deny others' rights. She simply seeks the same individualized accommodation routinely afforded to other employees whose religious conflict with workplace policies. *See Groff v. Dejoy*, 600 U.S. 447, 469-70 (2023) (recognizing that courts assess accommodations in a fact-specific manner without undermining nondiscrimination requirements).

Plaintiff established that she was denied a reasonable accommodation of her religious beliefs, and that Defendants coerced her into choosing between her beliefs and her job. The district court's venture into fact-finding to find no constitutional violation was an error, and its decision should be reversed.

## IV. Defendants cannot validate the District Court's impermissible adoption of an inquiry requirement for exercise of fundamental parental rights.

Defendants do not, and cannot, justify the district court's unilateral creation of a new "inquiry requirement" for a claim based on violation of

parents' fundamental constitutional rights to direct the upbringing of their children under the Fourteenth Amendment:

> Plaintiff asserts she has a right not to have information regarding her child's gender identity withheld. The Court agrees. However, the Court does not think the information can properly be deemed "withheld" to infringe on parental rights unless a parent inquired into or sought the information and it was intentionally concealed or they were lied to.

(Appx. Vol. III, p. 585). The district court acknowledged that it was creating a new requirement for the exercise of a fundamental constitutional right but argued that its unilateral redefinition of the right was justified to avoid overburdening Defendants with notifying parents and because parental rights are not absolute. (Appx. Vol. III, p. 587).

Rather than attempting to justify the district court's impermissible redefinition of a fundamental substantive due process right, Defendants claim the inquiry requirement is required to protect against intrusive questioning of parents' religious beliefs under the Establishment Clause. Defendants claim that, absent the district court's invented requirement that parents proactively seek information about their child's "gender identity," schools would be required to "preemptively inquire about every parent's religious beliefs and proclivities at the start of every school year." (Answer Brief, Dkt. 32, pg. 47). The district court neither

envisioned nor could it constitutionally mandate this. *See Does 1-11 v. Bd. of Regents of Univ. of Colorado,* 100 F.4th 1251, 1268 (10th Cir. 2024) ("[A] government policy that requires an intrusive inquiry into the validity of religious beliefs violates the Establishment Clause regardless of any purported government interest."). Undaunted by the fact that the judge's inquiry requirement had nothing to do with religious beliefs and the Establishment Clause, Defendants continue:

> The District cannot inquire into the nature and sincerity of persons' beliefs without violating the Establishment Clause yet must proactively ensure and enforce compliance with the religious beliefs of parents without knowledge of what those beliefs might be. The District Court properly held that imposing such a burden was unworkable. State entities cannot become the monitors and enforcers of privately held religious convictions.
>
> If the District could be liable in the present appeal without having prior knowledge of the Willeys' belief system, the only way to avoid future liability would be to treat every parent in the district as if they shared the Willeys' beliefs. The result would necessarily require imposing the Willeys' religious convictions on everyone. That would be tantamount to establishing a state religion which the Constitution does not allow.

(Answer Brief, Dkt. 32, p. 39). If those statements were true, then there would be an unquestionable Establishment Clause violation. However, the scenario envisioned by Defendants, which they claim represents Mrs. Willey's argument, is nothing more than a figment of Defendants'

imagination.

Mrs. Willey's argument regarding the district court's invented inquiry requirement has nothing to do with intrusive questioning about religious beliefs or the Establishment Clause. Instead, Mrs. Willey argues that the district court acted contrary to precedent when it determined that her fundamental parental right to direct the upbringing and education of her children must yield to prevent inordinately "burdening" the District with a parental notification requirement. (Opening Brief, Dkt. 23, p. 54). Mrs. Willey also argues that the district court's inquiry requirement is wholly unlike limitations cited by the district court, including restrictions against sending a child to a private school that discriminates on the basis of race, *Runyon v. McCrary*, 427 U.S. 160, 177 (1976), against demanding the right to attend school part-time and cherry-pick which courses children will take, *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699 (10th Cir.1998) or replacing state educational requirements with idiosyncratic views of what knowledge a child needs to be a productive and happy member of society. *Yoder*, 405 U.S. at 239 (White, J. concurring). Indeed, the district court cited no precedent for its invented inquiry requirement.

Defendants' imaginative attempt to validate the district court's impermissible invention of an inquiry requirement for exercise of fundamental parental rights does nothing to change the conclusion that the district court erred in granting summary judgment on Mrs. Willey's claims for violation of her fundamental parental rights.

## CONCLUSION

The district court erred in granting summary judgment. Genuine disputes of material fact exist regarding the burden on Mrs. Willey's religious exercise and the infringement of her fundamental parental rights. The district court erred as a matter of law by applying the rational basis test to Mrs. Willey's Free Exercise claims. PNCP is neither neutral nor narrowly tailored, and the District's actions coerced Mrs. Willey to act against her faith. For these reasons, the district court's order granting summary judgment to Defendants should be reversed on all counts, and Mrs. Willey permitted to proceed to trial on all of her claims.

Dated October 21, 2025.

Respectfully Submitted,

*/s/Mary E. McAlister*
Mary E. McAlister, Esq.
Ernest G. Trakas, Esq.
Child & Parental Rights Campaign

25

5425 Peachtree Parkway, Suite 110
Norcross, GA 30092
(770) 448-4525
mmcalister@childparentrights.org
etrakas@childparentrights.org
Attorneys for Appellants/Plaintiffs

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

## Type-Volume Limit, Typeface Requirements, And Type-Style Requirements

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 5,046 words, excluding those portions of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a 14-point or greater proportionally spaced Roman style typeface using Microsoft Office 365.

Dated: October 21, 2025

*s/ Mary E. McAlister*
Mary E. McAlister

# CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2025, a true and correct copy of this brief and addenda was electronically filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

L. Kathleen Chaney, Esq., CPCU
Eric Hevenor
Lambdin & Chaney, LLP
4949 S. Syracuse Street, Suite 600
Denver, CO  80237
T (303) 799-8889
F (303) 799-3700

kchaney@lclaw.net
ehevenor@lclaw.net


<u>*s/ Mary E. McAlister*</u>
Mary E. McAlister
Attorney for Plaintiffs-Appellants