**CASE NO. 25-8027**

---

**THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

**ASHLEY WILLEY & SEAN WILLEY,**

**APPELLANTS/PLAINTIFFS**

**v.**

**SWEETWATER COUNTY SCHOOL DISTRICT #1, ET AL.**

**APPELLEES/DEFENDANTS**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF WYOMING**

**CASE NO. 23-CV-69-S**

---

**PLAINTIFFS-APPELLANTS SUPPLEMENTAL BRIEF**

---

Ernest G. Trakas, Esq.
Mary E. McAlister, Esq.
Child & Parental Rights Campaign
5425 Peachtree Parkway, Suite 110
Norcross, GA 30092
(770) 448-4525
Etrakas@childparentrights.org
mmcalister@childparentrights.org
Attorneys for Plaintiffs-Appellants

1

On March 10, 2026, the court ordered the parties to simultaneously submit briefs addressing the United States Supreme Court's per curiam decision in *Mirabelli v. Bonta,* 607 U.S. __, (2026) 2026 WL 575049 (U.S. Mar. 2, 2026) (Doc. 56). In response to the Court's Order, Plaintiffs-Appellants submit this supplemental brief addressing the questions posed by the court in its Order.

Initially, it is important to note that *Mirabelli* is a per curiam decision, which is typically used to reverse lower court decisions quickly, without briefing or argument, to emphasize consensus on a particular, important issue. The Supreme Court has used *per curiam* opinions for landmark issues and cases. *See Bush v. Gore,* 531 U.S. 98 (2000) and *New York Times Co. v. United States,* 403 U.S. 713 (1971). In doing so, the Court signified a need for a singular, swift answer to a current and pressing question. Here, the question is simply whether parents have a constitutionally protected right to be the primary decision-makers on questions concerning their children's health, well-being, and religious upbringing. As demonstrated below, *Mirabelli* answered that question and in doing so ends the debate on the issue of parental rights on this issue.

**1. *Mirabelli v. Bonta* Should be Given Significant Precedential Weight.**

Although it arose from an interim application to vacate a stay, as noted above, the United States Supreme Court and lower courts have held that these rulings should

be given significant precedential weight when they clearly articulate the Court's view of the governing law.

Courts have recognized that emergency or "shadow docket" decisions can have substantial precedential influence when they clearly articulate the Court's view of the governing law. The Supreme Court's decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020), illustrates this point. Despite its expedited posture and limited briefing, the decision quickly became a central precedent in subsequent litigation challenging pandemic restrictions. Lower courts relied on it to resolve similar disputes, and the Supreme Court issued multiple grant-vacate-remand orders directing lower courts to reconsider cases and decisions in light of *Diocese of Brooklyn*.[1] These actions would make little sense if per curiam decisions lacked precedential significance.

In *Trump v. Boyle* the Supreme court stated that "[a]lthough our interim orders are not conclusive as to the merits, they ***inform how a court should exercise its equitable discretion in like cases***." 145 S. Ct. 2653, 2654 (2025) (emphasis added).

Lower courts take this guidance seriously.  For example, the Fourth Circuit in *CASA de Maryland, Inc. v. Trump* emphasized that although it technically retained authority to reach a different conclusion on the merits, "every maxim of prudence"

---

[1] Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays,* 44 Harv. J.L. & Pub. Policy 827, 834-835 (2021).

counseled against contradicting the Supreme Court's recent stay order absent strong evidence the Court had erred. 971 F.3d 220, 230 (4th Cir. 2020). The court reasoned that the Supreme Court's stay necessarily reflected the likelihood of success on the merits, and therefore lower courts should exercise restraint in reaching a contrary conclusion immediately afterwards. *Id.*

The Court cautions only against attributing precedential value to rulings that merely assume jurisdiction or dispose of issues without analysis. Such "drive by" jurisdiction rulings have no precedential effect. *McWhorter v. Federal Aviation Administration*, 88 F.4th 1317, 1321 (10th Cir. 2023). However, that limitation only applies where the Court labels an issue "jurisdictional" without analysis. It does not apply where the Court meaningfully addresses the underlying legal question in granting or vacating a stay, as is the case here. *Id.*

In *Mirabelli,* the Supreme Court clearly articulated its view of historical precedent and governing law, and its reasoning should be given precedential weight. The *Mirabelli* Court concluded that the parents were "likely to succeed on the merits of their Free Exercise Clause claim" noting that California's polices "substantially interfere with 'the right of parents to guide the religious development of their children.'" *Mirabelli v. Bonta*, No. 25A810, 2026 WL 575049 *2 (U.S. Mar. 2, 2026) (citing *Mahmoud v. Taylor,* 606 U.S. 522, 559 (2025). The Court also clarified that *Mahmoud* is not limited to curriculum and LGBTQ storybooks but covers all actions

4

that substantially interfere with parents" right to direct the religious upbringing of their children. *Id.* at *2, *4. Significantly, the Court emphasized that "the intrusion on parents' free exercise rights here—unconsented facilitation of a child's gender transition—is greater than the introduction of LGBTQ storybooks we considered sufficient to trigger strict scrutiny in *Mahmoud*." *Id.*

*Mirabelli* further underscores that parents cannot exercise their religious rights if they are deprived of information about their children's gender identity at school. As noted by Justice Barrett, California's nondisclosure policy applied even when parents explicitly requested information about their child's gender identity. *Id.* at *4. The Court also recognized that withholding such information effectively excludes parents from critical decisions regarding their child, "cutting out the primary protectors of children's best interest: their parents." *Id.* at *3. Accordingly, although *Mirabelli* does not constitute a full merits decision, it nonetheless reflects the Supreme Court's assessment of the relevant legal issues-particularly the likelihood of success on the merits and the balance of equitable factors. Therefore, this court should treat the decision as highly persuasive, if not dispositive authority.

2. **Consistent with *Mirabelli*, Plaintiff's Free Exercise Claims Should Be Evaluated under Strict Scrutiny.**

The *Mirabelli* Court concluded that "the parents who seek religious exemptions are likely to succeed on the merits of their Free Exercise Clause claim"

because "California's policies likely trigger strict scrutiny under that provision because they substantially interfere with the 'right of parents to guide the religious development of their children.'" *Mirabelli*, 2026 WL 575049 at *2. The Court applied this heightened scrutiny because the parents had "sincere religious beliefs about sex and gender" and "feel a religious obligation to raise their children in accordance with those beliefs," and California's policies "violate those beliefs and 'impos[e] the kind of burden on religious exercise that *Yoder* found unacceptable.'" *Id.*, referencing *Wisconsin v. Yoder,* 402 U.S. 994 (1971).

That "unacceptable burden" was the California policy that facilitated actions concerning a child's gender identity at school without parental consent, which infringed on the parents' sincerely held religious beliefs about sex and gender and their right and obligation to raise their children in accordance with their beliefs. *Mirabelli* at *2 (citing *Mahmoud,* 606 U.S. at 550). Consequently, the *Mirabelli* decision is grounded not merely in the very recent *Mahmoud* decision, but in the deeply rooted, longstanding tradition and principle recognized in *Yoder* that parents possess a constitutionally protected interest in directing their children's religious upbringing.

The Court further noted that the intrusion in *Mirabelli*—the unconsented facilitation of a child's gender transition—was greater than the burden that was found sufficient to trigger strict scrutiny in *Mahmoud*. *Id*. That comparison

6

underscores that the Court viewed the challenged policy in *Mirabelli* as imposing a significant burden on and interference with parental religious exercise.

Accordingly, *Mirabelli* reinforces that when a government policy substantially interferes with parents' religiously motivated decisions regarding the upbringing of their children, the policy is subject to strict scrutiny. That conclusion follows from the Court's reliance on *Mahmoud* and *Yoder* and its determination that the *Mirabelli* parents were likely to succeed on their Free Exercise claim under a heightened standard of review.

The same reasoning applies here. Plaintiff/Appellant, as the parent of A.S., possesses a fundamental right to direct the religious upbringing of her daughter. Plaintiff/Appellant alleges that the school's actions substantially burdened that right by undermining her ability to raise her child in accordance with her religious beliefs. Consequently, under *Mirabelli, Mahmoud,* and *Yoder,* strict scrutiny governs the analysis. The school district's actions here went beyond mere curriculum decisions, mirroring the "unconsented facilitation" highlighted in *Mirabelli*, and directly interfered with Plaintiff/Appellant's ability to guide her child's upbringing according to her faith. As in *Mirabelli*, strict scrutiny applies, and the policy cannot survive unless narrowly tailored to serve a compelling government interest. As was true in *Mirabelli*, Defendants/Appellees' claim that the policy serves a compelling interest in protecting children's safety is belied by its exclusion of the primary protectors of

children's best interests - their parents. *Mirabelli* at *3. Similarly, the Defendant/Appellees' policy cannot be said to be narrowly tailored. As the *Mirabelli* Court said of the California policy, the interest in safety could be served by "a policy that allows religious exemptions while precluding gender-identity disclosure to parents who would engage in abuse." *Id.*

Here, the policy is neither neutral nor generally applicable, so the rational basis analysis described in *Employment Division v. Smith,* 494 U.S. 872 (1990*)* does not control. Accordingly, consistent with *Mirabelli* and related precedent, Plaintiff's Free Exercise claim should be evaluated under strict scrutiny. The district's policy both substantially burdens Plaintiff/Appellant's religious exercise and interferes with her fundamental parental rights, making it constitutionally suspect under the framework the Supreme Court outlined in *Mirabelli*.

3. **Mirabelli's reasoning supports the conclusion that withholding gender-identity information from parents violates their 14th Amendment substantive due process rights.**

The Supreme Court's decision in *Mirabelli* necessarily informs and guides this court's consideration of the question of whether parents must be informed when their children communicate "gender identity" preferences to school officials and whether the parents' directives concerning their child's name and pronouns must be followed. Throughout the Supreme Court's opinion in *Mirabelli* and the underlying district court order and opinion granting a permanent injunction to the parent

plaintiffs, the courts emphasized that fundamental parental rights under substantive due process require that parents be affirmatively informed when their children communicate a "gender identity" preference to school officials and their directives concerning the adoption and use of said preference be followed. *Mirabelli* challenged statewide policies that required concealing information from parents. The constitutional right at issue underlying the policies that the district court found violated, and the Supreme Court found likely violated, was the parents' substantive due process right to information they needed to exercise their fundamental parental rights. *Mirabelli v. Bonta,* 2026 WL 575049 at *3, *4, *7; *Mirabelli v. Olsen,* 2025 WL 3712993 at *2 (SD CA December 22, 2025); *Mirabelli v. Olsen,* 2025 WL 3713588 at *1, *8, *12, *16 (SD CA December 22, 2025).

In the Supreme Court's decision vacating the Ninth Circuit's stay of the permanent injunction for the parent plaintiffs, the majority, concurrence and dissenting opinions emphasized that the right to receive information was necessary for parents to exercise their fundamental rights when their children exhibited signs of gender dysphoria and told school officials that they wished to be treated in a manner that differed from their sex.

> Under long-established precedent, parents—not the State—have primary authority with respect to "the upbringing and education of children." *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *accord, Meyer v. Nebraska*, 262 U.S. 390,

399–400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The right protected by these precedents includes the right not to be shut out of participation in decisions regarding their children's mental health. *Parham v. J. R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). Gender dysphoria is a condition that has an important bearing on a child's mental health, but when a child exhibits symptoms of gender dysphoria at school, California's policies conceal **that information** from parents and facilitate a degree of gender transitioning during school hours. These policies likely violate parents' rights to direct the upbringing and education of their children.

*Mirabelli v. Bonta*, 2026 WL 575049 at *3 (majority opinion) (emphasis added).

"California prohibits its public schools from **informing** parents of their child's gender transition at school unless the child consents. The record in this case indicates that the State's non-disclosure policy applies even if parents expressly ask for information about their child's gender identification." *Id.* at *4 (Barrett, J., concurring) (emphasis added). Depriving parents of the information regarding their child's "gender identity" at school "quite obviously excludes parents from highly important decisions about their child's mental health." *Id. Ipso facto,* parents are unable to exercise their fundamental right to make decisions about their child's upbringing, including their mental health, as established by the Supreme Court for more than 100 years. *Pierce,* 268 U.S. at 534–535; *Parham*, 442 U.S. at 602. The Supreme Court's decision reinstated the district court's permanent injunction order and underlying opinion that the state's policy was unconstitutional because it deprived parents of the information necessary to exercise their constitutional rights.

The district court's conclusion is most clearly stated in the portion of its order directing the state defendants to post a notice regarding parental rights.

> **Defendants shall include in a prominent place in PRISM training materials, and in any other state-created or approved instruction on the gender-related rights of student and faculty, the following statement:**
>
> **"Parents and guardians have a federal constitutional right _to be informed_ if their public school student child expresses gender incongruence. Teachers and school staff have a federal constitutional right to accurately inform the parent or guardian of their student when the student expresses gender incongruence. These federal constitutional rights are superior to any state or local laws, state or local regulations, or state or local policies to the contrary."**

_Mirabelli v. Olsen,_ 2025 WL 3712993 at *2 (bold in original, italics and underline added). The district court emphasized that provision of information to parents is critical in another portion of the order that enjoined Defendants and those acting in concert with or on behalf of Defendants from in any way interfering "with a teacher or other school administrator, counselor or staff from communicating to parents that his, her, or their child has manifested a form of gender incongruity such as changing preferred names or pronouns." _Id._

The district court's reasoning underlying the order reinstated by the Supreme Court confirms the conclusion that parents have an affirmative right to receive information when their children express a "gender identity" different from their sex at school and for the parents' decision(s) concerning the adoption and use of the

identity to be followed. "Parents have **a right to receive gender information** and teachers have a right to provide to parents accurate information about a child's gender identity." *Mirabelli v. Olsen,* 2025 WL 3713588 at *1 (emphasis added). "The parent plaintiffs want accurate information about their children from school staff. They reasonably contend that **accurate information is necessary** to carry out the right and duty to direct their children in religion, in medical care, and in life." *Id.* at *8. (emphasis added). "The constitutional question is about when gender incongruence is observed, whether parents have **a right to be informed** and make the decision about whether further professional investigation or therapy is needed." *Id.* at *12. (emphasis added). "Under the Fourteenth Amendment, parents have a substantive due process **right to know** of and explore whether their own child's gender incongruence is a medical or psychological condition and whether and what kind of treatment or approach is in their child's best interest." *Id.* at *16. (emphasis added). "This Court holds that **a parental right to be informed** about the gender identity expressed within the schoolhouse gate of one's child lives comfortably within the limits of the Fourteenth Amendment right." *Id.* (emphasis added).

These bold statements underlying the district court order reinstated by the Supreme Court in *Mirabelli v. Bonta* compel the conclusion that substantive due process requires that school districts affirmatively inform parents when their

children communicate with school officials regarding their "gender identity" and that they follow the parents' instructions.

> **Under *Mirabelli,* the free exercise clause requires that school districts affirmatively inform parents about their children's gender identity preference communicated to school officials.**

The *Mirabelli* Court's conclusion that school districts must affirmatively inform parents when their children express a "gender identity" preference that conflicts with their biological sex at school applies to claims under the Free Exercise clause as well as those brought under the Fourteenth Amendment. Parents cannot exercise their right to direct their children's religious upbringing under *Mahmoud,* 606 U.S. at 559, as affirmed in *Mirabelli,* if they are deprived of information that the school is facilitating conduct that violates core tenets of their religious beliefs.

California's policies depriving parents of information regarding their children's expression of a "gender identity" that differs from their sex violate parents' sincerely held religious beliefs and imposes an "unacceptable burden" on religious exercise. *Mirabelli v. Bonta*, 2026 WL 575049 at *2 (citing *Mahmoud,* 606 U.S. at 550). "Indeed, the intrusion on parents' free exercise rights here— unconsented facilitation of a child's gender transition—is greater than the introduction of LGBTQ storybooks we considered sufficient to trigger strict scrutiny in *Mahmoud.*" *Id.* The intrusion on parents' free exercise rights is concealment of information about conduct the school is undertaking with children that violates the

parents' sincerely held religious beliefs, *i.e.,* "unconsented facilitation" of actions to deny the reality of the child's God-given sex. "The parents who assert a free exercise claim have sincere religious beliefs about sex and gender, and they feel a religious obligation to raise their children in accordance with those beliefs." *Id.* As the Court made clear in *Mahmoud,* parents cannot fulfill that obligation if they are not provided with the information about what is occurring at school. *Mahmoud,* 606 U.S. at 545, 550.

Parents' free exercise rights require that the district affirmatively provide information to parents regarding the activity that substantially burdens their religious beliefs so that they can exercise their rights through excusing their children from the instruction. *Id.* at 569. The district court's similar order in *Mirabelli* was reinstated by the Supreme Court. *Mirabelli v. Olsen,* 2025 WL 3712993 at *2. The Supreme Court's actions in *Mirabelli* strongly counsel that failing to inform and even preventing parents from receiving information concerning their child's assertion of a discordant "gender identity" raises serious constitutional concerns, particularly where the information is necessary for parents to exercise their sincerely held religious beliefs.

**Whether parents have directed the school to use the child's legal name and related pronouns does not change the analysis.**

Parents' directions regarding use of their child's legal name and related pronouns do not change but solidify the conclusion that the parents have an affirmative right to receive the information necessary to exercise their parental rights. As illustrated by Justice Barrett's comments in her concurring opinion, when parents specifically make their preferences known, policies concealing information from them are all the more problematic. "The record in this case indicates that the State's non-disclosure policy applies **even if** parents expressly ask for information about their child's gender identification." *Mirabelli v. Bonta*, 2026 WL 575049 at *4 (Barrett, J., concurring) (emphasis added). Implicit in Justice Barrett's use of "even if" is the idea that depriving parents of information needed to make decisions about their child's well-being is all the more egregious when the parents have specifically raised the issue with school officials.

Likewise, the majority's statement that the state's policies likely fail strict scrutiny, *inter alia,* because they "cut out the primary protectors of children's best interests: their parents," *Id.* at *3, further illustrates the Court's conclusion that parents must be provided information regarding their children's expression of "gender identity" at school. Parents actively engaging with the school regarding that issue makes that conclusion all the more imperative.

### 4. Application of *Mirabelli* to the Facts of This Case

The facts in the present case are similar in several key respects to those in *Mirabelli*. In *Mirabelli*, parents and teachers challenged a school district policy requiring school personnel to conceal a student's discordant gender identity from parents unless the student consented to disclosure. The policy resulted in school officials socially transitioning students at school—using different names and pronouns—while intentionally withholding that important information from parents. Likewise, in the present case, Mrs. Willey, a parent and teacher in the district, challenged the district's policy requiring concealment of a student's gender identity that resulted in district personnel socially transitioning A.S. at school by treating her as a male and using male name and pronouns while intentionally concealing that information from her parents.

Another similarity is the deliberate nondisclosure to parents despite ongoing parental involvement in the child's education and well-being. In *Mirabelli*, the Poes were not informed during multiple parent-teacher meetings that their daughter was presenting as a male at school, and the Does were told by the principal that state law prevented disclosure. Similarly, in this case, school officials continued to conceal A.S.'s social transition from her parents during meetings, including Section 504 meetings intended to address her mental-health needs, while affirmatively using her birth name and pronouns in the parent's presence to maintain the concealment. (FAC ¶¶ 28-35, App. Vol. I at 0154-155; Ashley Willey Email 03/29/2022, App. Vol. I at

16

0197; Answers to Interrogatories, App. Vol. II at 0380-0382, 0383-0384; Audevart emails, App. Vol. III at 0447- 0453; Deposition of Chelsea Lund, App. Vol. III at 455; Deposition of Christopher Clifton, App. Vol. III at 459-462; 504 Plan, App. Vol. III at 512-519). As in *Mirabelli*, the district justified this nondisclosure as necessary to protect the student.

There are some factual differences that only strengthen Plaintiffs' constitutional challenges. In *Mirabelli*, the lawsuit originated with teachers who objected to the policy and sought a religious exemption, and parents later joined the action after discovering the policy's impact on their children. In contrast, the present case is brought directly by the parent, who is also a teacher in that school district, whose child was socially transitioned at school without her knowledge. Additionally, the record here contains more detailed evidence of the student's existing mental-health treatment and Section 504 accommodations, as well as evidence that the school worked closely with the parent on A.S.'s Section 504 Accommodation Plan while simultaneously concealing the social transition. This makes the concealment here more constitutionally problematic than the concealment in *Mirabelli* because it occurred in the context of coordinated discussions about the student's mental health.

The factual similarities compel the application of *Mirabelli* because both cases involve school policies that direct staff to socially transition a student at school

while concealing that information from parents. The differences strengthen the analogy. In this case, the concealment occurred despite extensive parental involvement in the student's medical and mental-health care, which underscores the parents' claimed right to be informed and to direct their child's upbringing. The constitutional concerns raised by the Supreme Court in *Mirabelli* regarding policies that require school personnel to conceal a student's gender identity from parents, are at least as compelling, if not more compelling, under the facts presented here.

Dated: March 23, 2026

Respectfully Submitted,

/s/ Ernest G. Trakas
Ernest G. Trakas, Esq.
Mary E. McAlister, Esq.
Child & Parental Rights Campaign
5425 Peachtree Parkway, Suite 110
Norcross, GA 30092
(770) 448-4525
Etrakas@childparentrights.org
mmcalister@childparentrights.org
Attorneys for Plaintiffs-Appellants

# CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, a true and correct copy of this supplemental brief was electronically filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

L. Kathleen Chaney, Esq., CPCU
Eric Hevenor
Lambdin & Chaney, LLP
4949 S. Syracuse Street, Suite 600
Denver, CO 80237
T (303) 799-8889
F (303) 799-3700
kchaney@lclaw.net
ehevenor@lclaw.net


/s/ Ernest G. Trakas
Ernest G. Trakas
Attorney for Plaintiffs-Appellants